IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02357-WYD-MEH

CS CAPITAL CORP., d/b/a THE INVOICE BANKERS CORP.,

    Plaintiff,

v.

LOCAL SENIOR SERVICES,
RANDY KALANI FAHILGA, and
ILD CORP.

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Plaintiff's Motion for Default Judgment [filed May 25, 2012; docket #50] seeking entry of default judgment against Defendants Local Senior Services ("LSS") and Randy Kalani Fahilga ("Fahilga") (collectively the "LSS Defendants"). The motion has been referred to this Court for recommendation. (Docket #51.) In conjunction with the motion, Plaintiff filed an Affidavit in Support of Motion for Default Judgment prepared by Greg Curtiss [docket #50-1], and an Affidavit in Support of Request for Attorney's Fees and Costs [docket #50-2]. Upon initial review of the materials submitted, the Court ordered Plaintiff to file a supplemental brief regarding the Court's personal jurisdiction over the LSS Defendants and subject matter jurisdiction over this case. Plaintiff supplemented its motion accordingly. (Docket #56.) In addition to considering the above documents, the Court held a hearing on the motion on July 27, 2012. At the hearing, the Court admitted into evidence all exhibits submitted with the motion. In light of several remaining concerns regarding Plaintiff's damages, the Court directed Plaintiff to file a second supplemental brief addressing the post-judgment interest rate and the pre-judgment interest rate as of August 3,

2012. Plaintiff filed its Second Supplement...[docket #58] accordingly. For the reasons that follow, the Court **recommends** Plaintiff's motion be **granted in part** and **denied in part** as specified herein.[1]

## BACKGROUND

**I.  Findings of Fact**

    1.    Plaintiff CS Capital Corp. d/b/a The Invoice Bankers Group is a Colorado corporation with its principal place of business in Englewood, Colorado. (Docket #33, ¶ 1.)

    2.    Defendant LSS is a Nevada corporation with a last known place of business in Irvine, California. (*Id*. at ¶ 3.)

    3.    Defendant Fahilga resides in Arizona. (*Id*. at ¶ 4.)

    4.    On or about March 10, 2010, Defendant LSS entered into a Receivables Purchase Agreement (the "RPA") with Plaintiff. Mr. Fahilga executed the agreement as president of LSS. (Docket #50-1 at 5-9.)

    5.    Pursuant to paragraph 3 of the RPA, Plaintiff purchased accounts receivable from Defendant LSS at a rate of 75% of the value owed to LSS. (Docket #50-1 at 5.)

    6.    Along with the initial purchase price, paragraph 3 requires Plaintiff to pay an

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

|   |   |
|---|---|
|   | additional "rebate" amount as determined by the number of days elapsing from Plaintiff's payment of the initial purchase price until Plaintiff's receipt of funds owed in connection with the accounts receivable. (*Id*.) |
| 7. | Paragraph 6 of the RPA provides in relevant part: |

In addition to any other rights we have, your failure to fully reimburse us with respect to an Impaired Account will give rise to indebtedness by you to us in an amount equal to the difference between one hundred percent (100%) of the Reimbursable Value of such Account and the amount of Good Funds we have received in payment of the account (the "Unpaid Amount").

(*Id*. at 6.)

8. Paragraph 11.7 of the RPA provides in relevant part :

You shall be deemed to have breached your obligations set forth in this Agreement if either you or any guarantor fails to pay an indebtedness to us when due, if you breach any term, provision, warranty, or representation made under this Agreement, if you become insolvent or are unable to pay your debts as they mature, if you make a general assignment for the benefit of creditors, or if a voluntary or involuntary petition for bankruptcy is filed by or against you. In the event of any such breach, we in our sole discretion may declare you in default of this Agreement ("Default") and all Accounts purchased by us will become immediately due and payable by you and will bear interest at thirty percent (30%) per annum from the date of Default.

(*Id*. at 8.)

9. Paragraph 11.10 of the RPA provides in relevant part:

Should a party institute any legal proceeding to enforce any term or provision of this Agreement, the prevailing party shall be entitled to reasonable attorney fees and reimbursement of related costs.

(*Id*. at 9.)

10. Plaintiff's president, Greg Curtiss, asserts that Defendant LSS breached its obligations under the RPA by failing to comply with the conditions set forth in paragraph 6. (*Id*. at 2.)

11. On March 10, 2010, in conjunction with the RPA, Defendant Fahilga executed a

Continuing Guaranty (the "Guaranty") in favor of Plaintiff and guaranteeing the indebtedness of Defendant LSS. (*Id*. at 10-13.)

12. Section 1 of the Guaranty provides:

    Guarantor hereby absolutely and unconditionally agrees to, and by these presents does hereby, guarantee the prompt and punctual payment, performance, and satisfaction of any and all loans, extensions of credit, and/or other obligations that Borrower [Local Senior Services] may now and/or in the future owe to and/or incur in favor of Lender, whether such indebtedness and/or obligations are direct or indirect, or by way of assignment, and whether such indebtedness and/or obligations are absolutely or contingent, liquidated or unliquidated, due or to become due, secured or unsecured, and whether now existing or hereafter arising, of any nature or kind whatsoever, up to a maximum principal amount outstanding at any one or more times not to exceed FIFTY MILLION AND NO/100 (U.S. $50,000,000.00) DOLLARS, together with interest, costs, and attorney's fees theron (with all of Borrower's indebtedness and/or obligations being hereafter individually and collectively referred to under this agreement as Borrower's "Indebtedness").

    (*Id.* at 10.)

13. Section 4 of the Guaranty states in relevant part:

    Should Borrower default under any of its Indebtedness in favor of Lender, Guarantor unconditionally and absolutely agrees to pay the full then unpaid amount of all Borrower's Indebtedness guaranteed hereunder, in principal, interest, costs, and attorney's fees.

    (*Id*.)

14. Mr. Curtiss asserts that Defendant LSS is in breach of its obligations to Plaintiff under the RPA, that Defendant Fahilga is in breach of his obligations to Plaintiff under the Guaranty, and that both LSS Defendants are therefore in default. (*Id*. at 3.)

15. A summary of accounts purchased by Plaintiff from Defendant LSS shows that Plaintiff purchased accounts totaling $484,800.46. (*Id*. at 14.)

16. Mr. Curtiss represents that Plaintiff has not received any good funds in payment of

any of the accounts, so the Unpaid Amount for all Impaired Accounts is $484,800.46. (*Id*. at 4.)

17. Plaintiff considered Defendant LSS to be in default as of January 1, 2011.

18. Both the RPA and the Guaranty contain the following language:

> This Agreement shall be interpreted and enforced in accordance with the laws of the State of Colorado. You hereby consent to the jurisdiction of the Courts of the State of Colorado, County of Arapahoe, and of any federal court located in the State of Colorado, and agree that venue in each of these courts shall be deemed proper in connection with any action or proceeding arising out of this agreement.

(*Id*. at 8, 13.)

## II. Procedural History

Plaintiff initiated this action on March 3, 2011, in Arapahoe County District Court seeking to enforce its rights under the RPA and Guaranty. (Docket #1-2.) As defendants, Plaintiff named LSS and Mr. Fahilga. (*Id*.) Relying on the Court's diversity jurisdiction under 28 U.S.C. § 1332, the LSS Defendants removed the action to federal court on September 7, 2011. (Docket #1.) Plaintiff filed proof of service on both LSS and Mr. Fahilga that same day. (Dockets ## 4,5.) In conjunction with their notice of removal, the LSS Defendants filed a motion for more definite statement pursuant to Fed. R. Civ. P. 12(e). (Docket #7.) Notably, the LSS Defendants' Rule 12(e) motion did not contest personal jurisdiction. (*Id*.) After full briefing, Chief Judge Daniel denied the motion. (Docket #18.)

On October 14, 2011, counsel for the LSS Defendants moved to withdraw. (Docket #19.) Recognizing that LSS could not proceed without counsel, the Court held a hearing on the motion and advised the LSS Defendants of the relevant risks prior to granting counsel's motion. (Docket #22.)

Plaintiff moved to amend its pleadings on February 1, 2012, and the Court granted Plaintiff's

5

motion on February 3, 2012. (Docket ##30, 32.) Accordingly, the Court accepted Plaintiff's Amended Complaint as filed. In addition to LSS and Mr. Fahilga, Plaintiff's Amended Complaint also names ILD Telecommunications, Inc. ("ILD") as a defendant. ILD moved the dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and the motion remains pending before Chief Judge Daniel. (Docket #36.) As of this date, Defendants LSS and Mr. Fahilga have failed to file an answer or otherwise respond to Plaintiff's Amended Complaint.

Upon motion by Plaintiff, the Clerk of the Court entered default against the LSS Defendants on May 21, 2012. (Dockets ##46, 49.) Plaintiff filed the present motion on May 25, 2012, seeking entry of default judgment against the LSS Defendants. (Docket #50.) The Certificate of Service attached to motion represents that Plaintiff mailed and emailed a copy of the motion to the LSS Defendants at Mr. Fahilga's last known address. (*Id*. at 3.) The Clerk of the Court used the same address to mail all minute orders issued by the Court to the LSS Defendants. Such mailings have not be returned as undeliverable.

With the LSS Defendants adequately notified, the Court held a hearing on the motion on July 27, 2012. (Docket #57.) No Defendants were present. Plaintiff's counsel, Andrew Toft, appeared in person. The Court asked counsel to provide a brief background of the action, which counsel so provided. In addition, the Court expressed concern regarding the post-judgment interest rate and whether the parties had expressed their intent to override the statutory rate using clear, unambiguous, and unequivocal language. *See Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1276 (10th Cir. 2010). The Court directed counsel to submit supplemental briefing on the topic of damages. Accordingly, Plaintiff filed a second supplement to its motion on August 3, 2012. (Docket #58.) Though Plaintiff's second supplement provided the Court with an updated pre-judgment damages calculation, it requested post-judgment interest at the statutory rate set forth in

28 U.S.C. § 1961. (*Id.*)

## **LEGAL STANDARD**

Default judgment may be entered against a party who "has failed to plead or otherwise defend." Fed. R. Civ. P. 55. After an entry of default, a defendant cannot defend a claim on the merits. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) (court declined to evaluate a merits argument after the entry of a default judgment); *see also Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) ("A default judgment is unassailable on the merits." (quotation omitted)); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages." (citation omitted)).

Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos*, No. 05-cv-00846-RPM-BNB, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true. *Vibe Technologies, LLC v. Suddath*, No. 06-cv-00812-LTB-MEH, 2009 WL 2055186, at *1 (D. Colo. July 10, 2009) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). In addition, the court accepts the undisputed facts set forth in the affidavits and exhibits. *Deery Am. Corp. v. Artco Equip. Sales, Inc.*, No. 06-CV-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001). A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy*, 825 F.2d 1463,

1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) ("upon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof.").

## ANALYSIS

With the preceding legal standards in mind and before considering whether damages should be assessed in this case, the Court addresses whether Plaintiff has established jurisdiction and whether its claims state a legal basis for relief.

**I.      Jurisdiction**

In determining whether entry of default judgment is warranted, the court must first consider personal and subject matter jurisdiction. *See, e.g., Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986) (lack of subject matter jurisdiction constitutes good cause to set aside a default judgment). "Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." *Okla. Radio Assos. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). Because federal courts are courts of limited jurisdiction, there is a presumption against the existence of jurisdiction, and "[t]he party invoking the jurisdiction of the court has the duty to establish that federal jurisdiction does exist." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974); *see also United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994) (noting that "[t]he party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the court's jurisdiction"). The Court will first address personal jurisdiction, then subject matter jurisdiction, and finally the assertion of jurisdiction through service of process.

A. Personal Jurisdiction

The Supreme Court has recognized that "the requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from rasing the issue." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982). A party may waive personal jurisdiction by agreeing, via contract, to submit to the jurisdiction of a given court. *Id*. at 703-04. Pursuant to Fed. R. Civ. P. 12(h)(1)(B), a party also waives the right to assert any defense listed in Rule 12(b)(2)-(5) by failing to include it a motion filed under Rule 12. Lack of personal jurisdiction is listed under Rule 12(b)(2), and is therefore subject to this waiver.

Plaintiff asserts, and the Court finds, that the Court may assert personal jurisdiction over the LSS Defendants on both contractual and procedural grounds. First, Defendant Fahilga, on behalf of himself and LSS, consented to the jurisdiction of "any federal court in the State of Colorado" as provided by the Governing Law provisions of the RPA and Guaranty. (Docket #50-1 at 8, 13.) Second, the LSS Defendants filed a motion under Rule 12(e) without raising lack of personal jurisdiction as a defense. Pursuant to the plain language of Rule 12(h)(1)(B), the LSS Defendants have waived the right to contest personal jurisdiction in this action. For these reasons, the Court finds that it may assert personal jurisdiction over the LSS Defendants in accordance with due process.

B. Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1332(a)(2)(1), federal courts have subject matter jurisdiction over civil actions involving citizens of different states where the amount in controversy exceeds $75,000, exclusive of interests and costs. Diversity of citizenship must be complete between all plaintiffs and all defendants, meaning that "no plaintiff may be a citizen of a state of which any defendant is also a citizen." *Cameron v. State Farm Mut. Auto Ins. Co.*, No. 10-cv-00699-PAB, 2010 WL

9

1413174, at *3 (D. Colo. Apr. 2, 2010) (citation omitted). For individuals, "state citizenship is the equivalent of domicile." *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). "A corporation, however, is deemed to be a citizen of any State in which it has been incorporated and, if different, the state in which it has its principal place of business." *Powers v. Allstate Motor and Cas. Ins. Co.*, No. 10-cv-00977-WYD-KLM, 2010 WL 2270182, at *1 (D. Colo. June 7, 2010) (citing 28 U.S.C. § 1332(c)(1)).

In this case, it is the LSS Defendants who elected to proceed in federal court. Their Notice of Removal asserts subject matter jurisdiction on the basis of diversity, and identifies the citizenship of the then-existing parties as follows: Defendant LSS is a Nevada corporation with its principal place of business in California, Defendant Fahilga is a citizen of Arizona, and Plaintiff is incorporated in Colorado, which is also its principal place of business. (Docket #1.) The addition of ILD, a self-described Delaware corporation with its principal place of business in Florida, did not affect the Court's diversity jurisdiction. (*See* docket #36.) Because complete diversity exists and the amount in controversy exceeds $75,000.00 [*see* docket #1 at ¶ 6], the Court finds that it may assert subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

    C.    <u>Service of Process</u>

"[S]ervice of process under Fed. R. Civ. P. 4 provides the mechanism by which a court ... asserts jurisdiction over the person of the party served." *Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008) (quoting *United States v. Bigford*, 365 F.3d 859, 865 (10th Cir. 2004)). An individual may be served in a judicial district of the United States by "delivering a copy of the summons and of the complaint to the individual personally" or by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2).

On September 7, 2011, Plaintiff filed two notarized Returns of Service indicating that Defendant Fahilga was personally served on August 8, 2011 [docket #5] and Defendant LSS was served through Mr. Fahilga that same day [docket #6]. Upon review of the Returns, the Clerk of the Court granted Plaintiff's motion for entry of default against the LSS Defendants. (Dockets ##48, 49.) Accordingly, the Court finds that Plaintiff properly served Defendants pursuant to Rule 4(e).

For the reasons stated above, the Court concludes it may exercise personal jurisdiction over the LSS Defendants and subject matter jurisdiction over this case.

## II.     Claim for Relief

In its Amended Complaint, Plaintiff claims that Defendants LSS and Fahilga breached their respective contracts and are jointly and severally liable for the principal amount due on the purchased accounts ($484,800.46), accrued interest at the contractual rate of 30% *per annum* (dated from January 1, 2011, through the date of judgment), post-judgment interest[2], and attorney's fees and costs. (Docket #33 at 6.) In the motion, Plaintiff requests judgment in its favor in the amount of the unpaid principal, unpaid pre-judgment interest and unpaid post-judgment interest at a rate of 30% *per annum*, and attorney's fees and costs. (Docket #50 at 2.) Rule 54(c) prescribes that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Accordingly, the Court evaluates the requested damages pursuant to the complaint, not the motion.

"[A] plaintiff is entitled to a determination of liability unless [it] has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof." *Weft, Inc.*, 630 F. Supp. at 1143. For an enforceable contract to exist, there must be mutual

---

[2]Plaintiff's Amended Complaint does not propose a specific rate of post-judgment interest. Though the instant motion asks for post-judgment interest at a rate of 30%, Plaintiff appears to have conceded that statutory rate is more appropriate. (*Compare* docket #50 at 2 *with* docket #58 at 2.)

11

assent to an exchange between competent parties, legal consideration, and sufficient certainty with respect to the subject matter and essential terms of the agreement. *See, e.g., Denver Truck Exch. v. Perryman*, 307 P.2d 805, 810 (1957); *see also Indus. Prods. Int'l, Inc. v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. App. 1997).

Plaintiff provided adequate evidence of assent and sufficient certainty regarding the subject matter and essential terms of the RPA and Guaranty executed by Defendants LSS and Fahilga, respectively. Plaintiff presented copies of the agreements, as well as an invoice documenting the total value of the accounts it purchased from LSS. (Docket #50-1 at 5-14.) The invoice, dated December 19, 2010, reflects a total balance of $484,800.46 owed to Plaintiff. (*Id*. at 14.) Plaintiff also included a sworn declaration by Greg Curtiss, president of CS Capital Corp., explaining the total amount of the unpaid principal and interest. (*Id*. at 1-4.) Accepting Plaintiff's factual allegations as true, this Court determines that Plaintiff has alleged a viable claim for breach of contract in this matter and that the LSS Defendants are jointly and severally liable to Plaintiff for damages.

### III. Damages

Plaintiff seeks relief against the LSS Defendants for: (1) the principal sum of $484,800.46; (2) pre-judgment interest calculated at a rate of 30% *per annum* ; (3) costs in the amount of $1,353.64; (4) attorney's fees in the amount of $17,562; and (5) post-judgment interest at a rate clarified below. (Dockets ##33 at 6, 50 at 2.)

Plaintiff bears the burden of establishing entitlement to recovery of damages against the defaulting LSS Defendants for each amount sought. *Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, No. 08-cv-01114-RPM-MEH, 2009 WL 765872, at *7 (D. Colo. Mar. 20, 2009) (citing *Clague v. Bednarski*, 105 F.R.D. 552 (E.D.N.Y. 1985)). In determining whether Plaintiff has met its burden,

the Court will consider each item of proposed recovery in turn.

### A. Principal Amount

Plaintiff seeks recovery of the principal amount due on a series of accounts receivable purchased by Plaintiff from Defendant LSS. These accounts, and the amounts due thereunder, are documented in the December 19, 2010 invoice provided by Mr. Curtiss. (Docket #50-1 at 14.) Upon review of the invoice submitted by Plaintiff, the Court finds that the total accurately reflects the amounts owed to Plaintiff under the RPA and Guaranty. Therefore, the Court recommends an award of $484,800.46 in damages against the LSS Defendants, who are jointly and severally liable for this amount.

### B. Pre-Judgment Interest

Plaintiff seeks pre-judgment interest at a rate of 30% *per annum*. In support of this amount, Plaintiff cites the RPA, which provides for the accrual of interest at 30% *per annum* from the date of default. (Dockets #50-1 at 8.) Though the Guaranty does not appear to contain a specific interest provision, the interest rate set forth in the RPA applies to Mr. Fahilga insofar as he agreed to pay the full amount owed to Plaintiff by LSS "in principal, interest, costs and attorney's fees." (*See id.* at 10.)

Upon review of the RPA and Guaranty, the Court finds that an award of pre-judgment interest at a rate of 30% *per annum* is appropriate. Using those rates, the Court finds that Plaintiff is entitled to a total of $231,110.36 in pre-judgment interest through August 3, 2012, and recommends the District Court award interest in that amount, plus all additional interest accruing through the date it enters judgment.

### D. Costs

Both the RPA and the Guaranty include provisions regarding costs: the RPA requires LSS

to pay all costs incurred as a result of default, and the Guaranty requires Mr. Fahilga to pay those costs in the event LSS fails to do so. (*See* docket #50-1 at 9, 10.) In light of these provisions, Plaintiff seeks to recover its state court filing fees and service of process fees totaling $1,353.64.

In support of this request, Plaintiff provides only an affidavit describing its various expenses in a spreadsheet-like fashion. (Docket #50-2 at 2.) This information is insufficient to carry Plaintiff's ultimate burden of establishing the amount of compensable costs and expenses to which it is entitled. *See English v. Colorado Dept. of Corr.*, 248 F.3d 1002, 1013 (10th Cir. 2001) (finding that a plaintiff's spreadsheet containing a list of service providers and the amounts paid was insufficient to prove the plaintiff's costs). Thus, while the Court agrees that Plaintiff is entitled to its costs pursuant to the RPA and Guaranty, it cannot recommend the amount Plaintiff's proposes at this time. Instead, the Court recommends that Plaintiff be awarded its costs following a review by the Clerk of the Court pursuant to D.C. Colo. LCivR 54.1.

  E. <u>Attorney's Fees</u>

Plaintiff seeks an award of fees in the amount of $17,562.50 for worked performed by attorney Andrew Toft.. In support of this request, Plaintiff cites both the RPA and the Guaranty. (Docket #50-1 at 8, 10.)

In evaluating a request for fees, a "basic point of reference ... is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Kornfeld v. Kornfeld*, 393 F. App'x 575, 578 (10th Cir. 2010) (citing *Hardt v. Reliance Standard Life Ins. Co.*, --- U.S. ----, 130 S.Ct. 2149, 2156-57 (2010)). Thus, attorney's fees are generally awarded where a contract provides for an award of fees if a defendant fails to make a payment under the contract. *See, e.g., Union Pac. R.R. Co. v. W. Int'l Grain Co.*, No. 07-cv-01028-RPM-CBS, 2008 WL 926545, at *2 (D. Colo. April 7, 2008).

14

A party requesting an award of fees "bears the burden of establishing entitlement to the award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A good faith effort must be made "to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.

Plaintiff correctly notes that the plain language of the RPA provides that "should a party institute any legal proceeding to enforce any term or provision of [the] Agreement, the prevailing party shall be entitled to reasonable attorney fees[.]" (Docket #50-1 at 9.) As with the other provisions of the RPA, responsibility for LSS's attorneys fees ultimately falls on Mr. Fahilga through his "agree[ment] to pay the full unpaid amount of all Borrower's Indebtedness...in costs and attorney's fees." (*Id.* at 10.)

Because contractual attorney's fees are generally recoverable, the Court finds that an award of reasonable attorney's fees is appropriate here. However, as the Court interprets the RPA and Guaranty, Plaintiff's recovery of fees must be limited to legal proceedings against the LSS Defendants. Defendant ILD was not a party to either agreement, and the Court is not persuaded that the parties contemplated and assented to the payment of fees with respect to a separate entity. Thus, the Court limits its analysis of attorney's fees to those incurred against the LSS Defendants.

Mr. Toft's affidavit asserts that Plaintiff has incurred $17,562.00 in attorney's fees in connection with this case. (Docket #50-2 at 2, 11.) A large portion of those fees involve Plaintiff's action against the LSS Defendants, but a fair percentage were incurred as a result of Defendant ILD. In particular, there are several charges related to counsel's communications with ILD's attorney, research regarding ILD, responses to ILD's motion to dismiss, and a class action lawsuit involving Verizon Wireless. Charges of this kind are likely to continue long after judgment has been entered against the LSS Defendants, making it difficult both practically and equitably to include them in the

15

Court's calculation. Moreover, as stated above, such fees do not fall clearly within the scope of agreement between Plaintiff and the LSS Defendants.

Upon review of the billing summary, the Court finds documentation for 37.2 hours billed toward work regarding the LSS Defendants. The Court reached this figure by excluding all charges that appeared to relate exclusively to Defendant ILD. Mr. Toft reports that his hourly rate for work performed in this matter is $250.00 per hour, which the Court finds reasonable in light of his nearly thirty years of experience. Using this rate, the Court calculates that Plaintiff incurred attorney's fees against the LSS Defendants totaling $9,300.00 and recommends that the District Court award Plaintiff its reasonable attorney's fees in this amount.

F. Post-Judgment Interest

Lastly, Plaintiff seeks an award of post-judgment interest. As noted above, the rate of post-judgment interest proposed by Plaintiff has changed over the course of this litigation: Plaintiff's Amended Complaint requested post-judgment interest but did not specify a rate, the present motion asks for post-judgment interest at a rate of 30%, and Plaintiff's supplemental briefing requests post-judgment interest at the statutory rate.

Plaintiff is statutorily entitled to post-judgment interest on any monetary judgment in a civil case recovered in a district court. *See* 28 U.S.C. § 1961(a). Although interest would typically accrue at the federal rate, parties may set their own rate of post-judgment interest by contract. *Newmont U.S.A. Ltd.*, 615 F.3d at 1276. These agreements are enforceable "so long as the parties indicate their intent to override the statute using clear, unambiguous, and unequivocal language." *Id*. at 1277.

At the hearing on the present motion, the Court expressed concern regarding the source of the 30% post-judgment interest rate Plaintiff sought to apply. Plaintiff's counsel cited paragraph

11.7 of the RPA, which provides for 30% interest generally. The Court afforded Plaintiff an opportunity to demonstrate that the RPA and/or Guaranty reflected a clear intent by the parties to supplant the statutory rate of post-judgment interest. However, Plaintiff's supplemental brief on the subject requested "interest at the post-judgment rate set in 28 U.S.C. § 1961." (Docket #58 at 3.)

Neither the RPA nor the Guaranty mention post-judgment interest, much less the default provisions of 28 U.S.C. § 1961. Although the Court takes no position on whether parties must explicitly cite the statute in order to contractually circumvent it, the Court cannot find that the parties in this case "clear[ly], unambigious[ly], and unequivocal[ly]" intended to establish an alterative post-judgment interest rate. *See Newmont U.S.A. Ltd.*, 615 F.3d at 1277. Plaintiff appears to agree. Accordingly, the Court recommends the District Court award Plaintiff post-judgment finance charges only as determined by 28 U.S.C. § 1961.

## CONCLUSION

Based on the foregoing, the Court respectfully **recommends** that Plaintiff's Motion for Default Judgment [filed May 25, 2012; docket #50] be **granted in part** and **denied in part** as stated herein, and that judgment be entered against Defendants LSS and Fahilga for: (1) the principal sum of $484,800.46; (2) pre-judgment interest at a rate of 30% *per annum*, totaling $231,110.36 through August 3, 2012, plus all additional interest accrued through the date judgment is entered; (3) costs as determined by the Clerk of the Court pursuant to D.C. Colo. LCivR 54.1; (4) attorney's fees in the amount of $9,300.00 ; and (5) post-judgment interest at the rate specified in 28 U.S.C. § 1961 until the total amount is satisfied.

Respectfully submitted at Denver, Colorado, this 15th day of August, 2012.

                            BY THE COURT:

                            *Michael E. Hegarty*

                            Michael E. Hegarty
                            United States Magistrate Judge